IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| AMIR RAHIMI,<br><br>    Petitioner,<br>v.<br><br>CORY WILLIAMS, in his official capacity as Chief Jail Administrator of Polk County Jail; KEVIN J. SCHNEIDER, in his official capacity as Polk County Sheriff; SAMUEL OLSON, in his official capacity as St. Paul Field Office Director; TODD LYONS, in his official capacity as Acting Director of United States Immigration and Customs Enforcement; SIRCE E. OWEN, in her official capacity as Acting Director of the Executive Office for Immigration Review; and KRISTI NOEM, in her official capacity as Secretary of the Department of Homeland Security; PAMELA BONDI, in her official capacity as the Attorney General; and DONALD J. TRUMP, in his official capacity as President of the United States,<br><br>    Respondents. | No. 4:25-cv-00491-RGE-WPK<br><br>ORDER GRANTING PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS |

## I.    INTRODUCTION

Petitioner Amir Rahimi brings a petition for a writ of habeas corpus against Respondents Cory Williams, in his official capacity as Chief Jail Administrator of Polk County Jail; Kevin J. Schneider, in his official capacity as Polk County Sheriff; Samuel Olson, in his official capacity as St. Paul Field Office Director; Todd Lyons, in his official capacity as Acting Director of United States Immigration and Customs Enforcement; Sirce E. Owen, in her official capacity as Acting Director of the Executive Office for Immigration Review; Kristi Noem, in her official capacity as Secretary of the Department of Homeland Security; Pamela Bondi, in her official capacity as the

Attorney General; and Donald J. Trump, in his official capacity as President of the United States.[1] Rahimi, who was previously granted an order of supervision, is currently in federal custody pursuant to immigration proceedings. In this habeas corpus petition, Rahimi challenges his re-detention and requests immediate release under 8 U.S.C. § 1231 and the Due Process Clause of the Fifth Amendment.

The Court concludes Rahimi is being detained unlawfully and grants his petition for a writ of habeas corpus.

## II.   BACKGROUND

The petition alleges Rahimi is a sixty-one-year-old Iranian national and citizen. Pet. Writ Habeas Corpus ¶ 24, ECF No. 1. When Rahimi was eighteen years old, and during the Islamic revolution, armed Islamic Revolutionary Guards raided Rahimi's family home in the middle of the night and arrested his sister and his father. *Id.* ¶ 25. The Revolutionary Guard later also arrested Rahimi's mother. *Id.* Rahimi, who had not been present during the midnight raid and was fearful the Revolutionary Guard would arrest him as well, fled Iran. *Id.* ¶ 26. Rahimi arrived in Spain, then travelled to Canada and applied for asylum. *Id.* ¶¶ 27–28. Rahimi was granted asylum in Canada, but it was later revoked. *Id.* ¶¶ 29–32. Rahimi entered the United States on February 14, 1991, and was charged with, and pled guilty to, entry without inspection. *Id.* ¶ 33.

On January 22, 1992, the immigration court in Dallas, Texas, issued Rahimi a deportation order to Iran in abstention. *Id.* ¶ 36. Rahimi failed to appeal the order within the necessary timeframe, and it became final on February 27, 1992. *Id.* ¶ 37. Rahimi married a U.S. citizen on February 8, 1992, and in 1993 filed an I-130 Immediate Relative Visa Petition, which was granted.

---

[1] The Court refers to Respondents Cory Williams and Kevin Schneider as "State Respondents." The Court refers to Respondents Samuel Olson, Todd Lyons, Sirce Owen, Krisi Noem, Pamela Bondi, and Donald Trump as "the Government."

*Id.* ¶ 39. However, Rahimi was then detained pursuant to the outstanding order of removal. *Id.* After a prolonged period of detention, Rahimi pled no contest to a misdemeanor charge in California State Court. *Id.* ¶ 43. Rahimi was released and placed under an order of supervision on March 14, 1995. *Id.*

Following the period of state probation, and because Rahimi complied with all imposed probationary conditions, the California misdemeanor charge was withdrawn from Rahimi's record. *Id.* Rahimi has no further criminal convictions. *Id.* ¶ 44. Rahimi owns two properties, does not have any debts, and does not rely on public assistance. *Id.* ¶ 45. Rahimi works as a professional mechanic with his own business. *Id.* ¶ 44. Rahimi has three children, including a son currently serving as a United States Air Force Officer, all of whom are native-born United States citizens. *Id.* ¶¶ 4, 44. Rahimi fully complied with the terms of the order of supervision for the over thirty years it was in effect. *Id.* ¶¶ 44–45.

In August of 2012, during a routine check-in with ICE in Des Moines, Rahimi was given a new order of supervision. *Id.* ¶ 52. Pursuant to this new order, Rahimi was required to check in with ICE monthly and apply for new travel documents. *Id.* In compliance with this order, Rahimi filed for a visa and travel documents from Iran, Germany, Spain, and Canada. *Id.* On September 21, 2012, Iran denied his application for travel documents on the grounds Rahimi did not have his original birth certificate. *Id.* ¶ 53. Spain and Germany also did not grant Rahimi travel documents. *Id.* ¶ 52.

On July 22, 2025, during a scheduled check-in, ICE arrested Rahimi. *Id.* ¶ 46. Rahimi was not provided with notice of any revocation of his supervision order. *Id.* Nor was Rahimi provided with a notice of violation. *Id.* At the time of his detention, an ICE agent stated the reason for Rahimi's re-detention was ICE was "seeking a third country for [his] removal." *Id.* On November

3

1, 2025, an ICE agent stated they "are trying to obtain travel documents." *Id.* ¶ 50. Rahimi has been detained at the Polk County jail since July. *Id.*

On December 12, 2025, Rahimi filed a petition for a writ of habeas corpus and complaint, asserting he is being detained in violation of 8 U.S.C. § 1231(a)(1)(A)–(B) and 8 C.F.R. § 1241.1 (Count I) and the Due Process Clause of the Fifth Amendment (Count II). ECF No. 1 ¶¶ 75–85. The Government filed a resistance. Fed. Resp'ts' Resist. Pet. Writ Habeas Corpus, ECF No. 2. State Respondents did not file a response.

Rahimi requests the Court issue a writ of habeas corpus ordering Respondents to release him from custody and reinstate his order of supervision. ECF No. 1 ¶ 86. Rahimi also requests declarations that he has complied with the conditions of his supervision, that his detention is unlawful, and that he is not removable "for the reasonably foreseeable future." *Id.* He further seeks an opportunity to be heard regarding any future removal plan and asks the Court to enjoin any future re-detainment "unless and until ICE complies with 8 C.F.R. § 242.4" and declare that ICE may not revoke his order of supervision without complying with 8 C.F.R. § 242.4(1). *Id.*

The Court sets out additional facts as necessary below.

### III. LEGAL STANDARD

"Congress has granted federal district courts, 'within their respective jurisdictions,' the authority to hear applications for habeas corpus by any person who claims to be held 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Rasul v. Bush*, 542 U.S. 466, 473 (2004) (quoting 28 U.S.C. §§ 2241(a), (c)(3)). "[T]he writ of habeas corpus remains available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const. art. I, § 9, cl. 2). The district court's habeas jurisdiction includes challenges to immigration-related detention. *See Zadvydas v. Davis,* 533 U.S. 678,

687–88 (2001). The district court's habeas jurisdiction also includes challenges to detention by noncitizens. *See id.*; *Jennings v. Rodriguez,* 583 U.S. 281, 292–96 (2018).

## IV. DISCUSSION

Rahimi challenges the revocation of his order of supervision and re-detention as a violation of 8 U.S.C. § 1231(a) and various regulations, as well as the Due Process Clause of the Fifth Amendment. *See* ECF No. 1 ¶¶ 75–85. Rahimi first argues his re-detention thirty-four years after his removal order became final violates the Immigration and Nationality Act. *Id.* ¶¶ 75–79. Second, Rahimi contends his detention violates the Due Process Clause of the Fifth Amendment. *Id.* ¶¶ 80–85. Because the Court resolves this case on statutory grounds, it does not reach the constitutional claim. *See United States v. Turechek,* 138 F.3d 1226, 1229 (8th Cir. 1998) (discussing the court's duty to avoid constitutional issues which are not necessary to resolve the case at issue).

### A. Jurisdiction

The Government contends this Court lacks jurisdiction to entertain Rahimi's challenge. ECF No. 2 at 13–14. The Supreme Court has made clear "habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention." *Zadvydas,* 533 U.S. at 688. The Government correctly notes 8 U.S.C. § 1252 strips the Court's jurisdiction to review decisions to execute removal orders. ECF No. 2 at 13. However, Rahimi does not challenge his removal order; Rahimi challenges the Government's revocation of his order of supervision and re-detention absent a significant likelihood of removal in the reasonable future. ECF No. 1 ¶ 77.

The Court therefore has jurisdiction to hear Rahimi's habeas petition and proceeds to the merits of the claim.

### B.     Detention

The Government's ability to detain, release, and revoke the release of noncitizens subject to orders of removal is governed by specific regulations.[2] *Yee S. v. Bondi*, No. 25-CV-02782 (JMB/DLM), 2025 WL 2879479, at *3 (D. Minn. Oct. 9, 2025). Government agencies are required to follow their own regulations. *Id.* (citing *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954)).

Following an order to remove a noncitizen, 8 U.S.C. § 1231(a)(1) provides "the Attorney General shall remove the [noncitizen] from the United States within a period of 90 days (in this section referred to as the 'removal period')." 8 U.S.C. § 1231(a)(1)(A). If the noncitizen is not removed within the ninety-day removal period, the noncitizen "pending removal, shall be subject to supervision under regulations prescribed by the Attorney General." 8 U.S.C. § 1231(a)(3). The statute permits detention of a noncitizen beyond the ninety-day removal period where the noncitizen "has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal." 8 U.S.C. § 1231(a)(6). However, even if an exception permitting detention outside the ninety-day removal period applies, noncitizens may not be held indefinitely. *Zadvydas*, 533 U.S. at 689–90 (noting § 1231(a)(6) "does not permit indefinite detention").

Section 241.13 establishes procedures governing when a noncitizen subject to a removal order has been detained past the expiration of the removal period and shows there is no significant likelihood he will be removed in the reasonably foreseeable future. 8 C.F.R. § 241.13(a). The re-detention of a noncitizen who is on release subject to an order of supervision is governed by 8 C.F.R. § 241.13(i). This section permits the Government to re-detain a noncitizen "if, on account

---

[2] While the relevant regulations use the term "alien," the Court uses the term "noncitizen."

of changed circumstances, the Service determines that there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(2). While the Eighth Circuit has not addressed the scope of § 241.13(i), in *Kong v. United States*, the First Circuit found § 241.13(i)(2) required "(1) an individualized determination (2) by ICE that, (3) based on changed circumstances, (4) removal has become significantly likely in the reasonably foreseeable future." 62 F.4th 608, 619–20 (1st Cir. 2023). The role of a district court is to review ICE's "claim in light of the regulations instructing ICE on how it should make such a determination." *Id.* at 620. "[W]here an immigration 'regulation is promulgated to protect a fundamental right derived from the Constitution or a federal statute,' . . . 'and [ICE] fails to adhere to it, the challenged [action] is invalid.'" *Rombot v. Souza*, 296 F. Supp. 3d 383, 388 (D. Mass. 2017) (quoting *Waldron v. I.N.S.*, 17 F.3d 511, 518 (2d Cir. 1993)) (second and third alteration in original).

As the habeas petitioner, Rahimi "bears the ultimate burden of showing that his detention violates the law." *Yee S.*, 2025 WL 2879479, at *4 (citing *Copenhaver v. Bennett*, 355 F.2d 417, 422 (8th Cir. 1966)). However, as discussed above, the relevant regulation places the burden on ICE to show changed circumstances which make removal significantly likely in the reasonably foreseeable future. Because Rahimi has shown that the Government has been unable to secure his removal, and he has been unable to secure travel documents, whether he bears the initial burden is immaterial. In 2012, Rahimi sought travel documents from Iran and was rejected. Pl.'s Ex. 5 Supp. Pet. Writ Habeas Corpus, ECF No. 1 at 38. Rahimi also sought visas to Spain and Germany in 2012, which were also unsuccessful. Pl.'s Ex. 6 Supp. Pet. Writ Habeas Corpus, ECF No. 1 at 42–45; Pl.'s Ex. 7 Supp. Habeas Pet., ECF No. 1 at 46–51. Rahimi's evidence also indicates no changed circumstances which justifies re-detention under § 241.13(i)(2). The Government must therefore carry the burden to show "on account of changed circumstances, [ICE] determines that

there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(2).

### 1. Likelihood of Removal

The Government states "there is a significant likelihood – based on this record [–] that Petitioner will be removed with [sic] the foreseeable future." ECF No. 2 at 12. In support of this assertion, the Government states "[o]n January 15, 2026, representatives with ICE Enforcement and Removal Operations met with Iranian officials at the Iranian Consulate in Washington, D.C. regarding the issuing of a travel document for Petitioner." *Id.* at 7. "The Iranian officials stated they have submitted the matter to officials in Tehran and are waiting for approval to issue a travel document to Petitioner." *Id.* The Government concludes from this, "Petitioner's removal from the United States and return to Iran is being actively pursued by officials in both countries." *Id.* In support of this bare assertion, the Government provides a declaration from Deportation Officer Ronald Raad. Raad Decl., ECF No. 2-1. The Government provides no other basis for this assertion.

The circumstances here mirror those in numerous recent habeas cases involving re-detained noncitizens previously released on supervision. In the vast majority of these cases, courts have found the Government failed to identify and support sufficient changed circumstances or demonstrate a significant likelihood of removal in the reasonably foreseeable future. *See Phongsavanh v. Williams*, No. 4:25-CV-00426-SMR-SBJ, 2025 WL 3124032, at *4 (S.D. Iowa Nov. 7, 2025) (collecting cases). The Court finds these cases instructive.

The Court finds *Yee S.* particularly probative. 2025 WL 2879479. In *Yee S.*, the court found the Government's assertion that it was "in the process of obtaining a travel document" failed to show a significant likelihood of removal in the reasonably foreseeable future. *Id.* at *5. While the Government in *Yee S.* failed to file a promised declaration regarding ICE's belief that removal was likely, the court observed "[e]ven if a declaration had been filed averring to this threadbare,

8

subjective belief, it would have been immaterial" because the Government "provide[d] no further details that would support such a belief." *Id.*

Just as in *Yee S.*, the Government here "simply repeat[s] . . . vague and conclusory assertions" unsupported by evidence. The previous rejection letter from Iran to Rahimi, dated September 21, 2012, states, "in accordance with regulations governing the issuance of a travel document (T.D.), submission of the birth certificate is necessary" and Iran "would not be able to issue the T.D. for anyone without this document." ECF No. 1 at 37. The Government provides no documents or other exhibits demonstrating significant progress has been made to address the previous failures in securing travel documents. Nor does the Government provide corroborative evidence of the communication between the States. The Government provides no documentation regarding whether Rahimi has successfully located his birth certificate, or whether Iran has altered its previously stated requirement that Rahimi provide his birth certificate. Just as in *Yee S.*, the Government fails to substantiate the vague and conclusory claim that removal "is being actively pursued." ECF No. 2 at 7. The Government therefore fails to show a likelihood of removal in the reasonably foreseeable future.

Even where courts have been presented with *some* evidence, courts have still granted relief to petitioners. In *Nguyen v. Hyde*, for example, the court found a new repatriation agreement with Vietnam failed to establish changed circumstances because, even if the court assumed the petitioner was subject to the repatriation agreement, Vietnam retained "total discretion whether to issue a travel document." 788 F. Supp. 3d 144, 151 (D. Mass. 2025). The court further noted the Government failed to provide details of what stage of processing the request for travel documents had reached or the expected wait time. *Id.* at 152.

Here, the Government has not produced any evidence regarding the status of the request to Iran, the timeline of any response from Iran, the expected likelihood of success of ICE's request

9

to Iran, or why Rahimi is more likely to obtain travel documents this time than when his request was previously denied. Just as in *Nguyen*, Iran has the sole discretion to issue Rahimi travel documents. Iran has previously exercised this discretion to deny Rahimi travel documents, and the Governments fails to show changes or progress this time indicating a likelihood of removal in the reasonably foreseeable future.

In *Liu v. Carter*, the court found evidence of an increase in removals to China did not constitute changed conditions because the Government failed to address the specific obstacles to removing the petitioner specifically —including "the lack of proper documentation." No. 25-3036-JWL, 2025 WL 1696526, at *2 (D. Kan. June 17, 2025). The court in *Liu* noted the Government failed to provide "any details about why that documentation could not be obtained in the past, nor have they attempted to show why obtaining that particular documentation is more likely this time around." *Id.* at *3.

Here, just as in *Liu*, lack of proper travel documentation is an obstacle to removal. Rahimi was previously unsuccessful in obtaining travel documents from Iran, Spain, and Germany. ECF No. 1 ¶ 52. Iran denied Rahimi travel documents specifically because the request was missing required documentation. *Id.*; ECF No. 1 at 37. The Government provides no details on what documents have been submitted to Iran, whether these documents differ from the previous unsuccessful attempt to secure travel documents, or whether the Government has taken other steps to address the specific obstacles facing Rahimi's removal. Because the Government does not address specific obstacles, the Government fails to show a likelihood of removal in the reasonably foreseeable future.

### 2. Country Conditions

Furthermore, the Court takes judicial notice that conditions in Iran appears to make it less likely that Rahimi may be removed in the reasonably foreseeable future. *Am. Prairie*

10

*Const. Co. v. Hoich*, 560 F.3d 780, 798 (8th Cir. 2009) (permitting courts to take judicial notice of facts of common knowledge or capable of verification). The Department of State noted on January 14, 2026, ongoing "[p]rotests across Iran continue to escalate," resulting in "[i]ncreased security measures, road closures, public transportation disruptions, and internet blockages." U.S. Virtual Embassy Iran, U.S. Department of State, Iran Security Alert (Jan. 14, 2026), https://ir.usembassy.gov/iran-security-alert-americans-should-leave-iran-now-january-13-2026/. The Iranian government has "restricted access to mobile, landline, and national internet networks" and "[a]irlines continue to limit or cancel flights to and from Iran, with several suspending service." *Id.* The Government does not address these developments nor explain how ICE believes there exists changed circumstances making removal significantly more likely in the reasonably foreseeable future in the face of increased instability.

The Government does not address how the travel restrictions will impact ICE's ability to remove Rahimi to Iran in the face of widespread flight cancelations. The Government does not address how the widespread internet blockade will alter ICE's timeline for receiving necessary travel documents. The Government does not provide evidence showing Iran is inclined to cooperate with ICE's requests, nor does the Government address how the changing circumstances surrounding the protests in Iran impacts the likelihood of Rahimi's removal. The threadbare assertions proffered by the Government fail to address deteriorating conditions in Iran. For this reason, as well, the Government fails to meet its burden to show changed circumstances which create a significant likelihood of removal in the reasonably foreseeable future.

### 3. Duration of Proceedings

In addition, the duration of foreseeable future proceedings related to removal is relevant to the reasonable foreseeability of removal analysis. *See Munoz-Saucedo v. Pittman*, 789 F. Supp. 3d 387, 399 (D.N.J. 2025) (noting "even if ICE identified a third country, Petitioner . . . would be

entitled 'to seek fear-based relief from removal to that country'" requiring "'additional, lengthy proceedings'"); *Zavvar v. Scott*, No. CV 25-2104-TDC, 2025 WL 2592543, at *8 (D. Md. Sept. 8, 2025) ("The fact that [petitioner] likely will have the opportunity to seek further relief from the Immigration Court, and then potentially file appeals from any adverse rulings, further demonstrates that removal is not likely in the reasonably foreseeable future."). Here, Rahimi specifically states he "does have reason to fear his removal to Iran or a third country due to past persecution and his son's active status in the U.S. Air Force." ECF No. 1 ¶ 4. Cyrus Rahimi, Petitioner's son, "has been actively deployed overseas in the United States Air Force for six (6) years," including "to England, South Korea, and Japan." *Id.* ¶¶ 4, 44. The January 14, 2026, State Department alert states "demonstrating connections to the United States can be reason enough for Iranian authorities to detain someone." U.S. Virtual Embassy Iran, U.S. Department of State, Iran Security Alert (Jan 14, 2026). It is therefore likely that even if the Government is able to secure travel documents and cooperation with Iran to effectuate Rahimi's removal, he will seek further relief from removal to Iran. Rahimi contends that because his son is an officer in the United States Air Force and has been deployed overseas as a member of the United States military, he may face danger in Iran. ECF No. 1 ¶ 4. Rahimi also fears removal to Iran because of his family's previous persecution in Iran. *Id.* ¶ 25. Therefore, because Rahimi presents grounds to pursue fear-based relief from removal, the Court finds further proceedings before removal are likely. These fear-based proceedings further demonstrate that removal is not likely in the reasonably foreseeable future. *See Zavvar*, 2025 WL 2592543, at *8.

    4.    Remedy

The Government has failed to demonstrate an individualized determination that changed circumstances now render Rahimi's removal in the reasonably foreseeable future significantly likely. Nothing in the record indicates what has changed during the over thirty years Rahimi was

under supervision that would now justify his detention or demonstrate a significantly increased likelihood of his removal in the reasonably foreseeable future. The Government does not address how recent unrest in Iran has impacted the reasonable foreseeability of removal. The Government further fails to address the likelihood that Rahimi pursues fear-based relief from removal stemming from his son's military service to the United States, the increased risk of harm his son's service to the United States poses to Rahimi, or the delays in removal proceedings likely to accompany such a challenge.

Therefore, the Court determines Rahimi is being unlawfully detained and grants his petition for a writ of habeas corpus and orders him released. The Court reinstates the conditions imposed by Rahimi's 2012 order of supervision, restoring the status quo before his July 2025 re-detention. The Court does not grant the full scope of the declaratory and injunctive relief Rahimi requests. Because the writ resolves the legality of his current detention, his remaining requests for relief are denied. The Court's order does not invalidate the removal order. The Government must comply with its own regulations. Absent a violation of the conditions of his order of supervision, the Government may not revoke Rahimi's supervision and detain him without demonstrating that changed circumstances create a significant likelihood of removal in the reasonably foreseeable future. *See* 8 C.F.R. § 241.13(i)(2). Such a demonstration must be consistent with the standards set forth in this order, including consideration of the likelihood of further fear-based proceedings Rahimi is entitled to before removal.

## V.   CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that Petitioner Amir Rahimi's Petition for a Writ of Habeas Corpus, ECF No. 1, is **GRANTED**. State Respondents shall release Petitioner from custody immediately. The Government shall ensure State Respondents release Petitioner from custody immediately.

13

**IT IS FURTHER ORDERED** that Respondents shall certify compliance with the Court's order by filing an entry on the docket by January 23, 2026.

**IT IS FURTHER ORDERED** that, absent a violation of the conditions of his order of supervision, the Government may not revoke Rahimi's supervision and detain him without demonstrating with reliable relevant evidence that changed circumstances create a significant likelihood of removal in the reasonably foreseeable future under 8 C.F.R. § 241.13(i)(2), consistent with this order.

**IT IS SO ORDERED**.

Dated this 22nd day of January, 2026.

REBECCA GOODGAME EBINGER
UNITED STATES DISTRICT JUDGE